1
2
3
4          UNITED STATES DISTRICT COURT
5          NORTHERN DISTRICT OF CALIFORNIA
6
7    ADDINGTON,                           Case No.  23-cv-05099-HSG
8               Appellant,                **ORDER AFFIRMING BANKRUPTCY
9          v.                             COURT**
10   PG&E CORPORATION,                    Re: Dkt. No. 4
11              Appellee.
12
13         Pending before the Court is pro se Appellant David P. Addington's appeal from the

14   bankruptcy court's grant of summary judgment and denial of his motion for reconsideration.  Dkt.

15   No. 1.  The Court finds this matter appropriate for disposition without oral argument and the

16   matter is deemed submitted.  *See* Civil L.R. 7-1(b).  For the reasons detailed below, the Court

17   **AFFIRMS**.

18   I.    **BACKGROUND**

19         A.    **Factual Background**

20          The dispute between Mr. Addington and PG&E Corporation and Pacific Gas and Electric

21   Company (collectively, "PG&E") involves two electric transmission towers located in Mr.

22   Addington's backyard in Piedmont, California.  The towers were built and previously maintained

23   by PG&E's predecessor, Great Western Power Company, pursuant to a 1908 utility easement.  *See*

24   Dkt. No. 6-2 (App. Vol. II) at 37–45.[1]  The easement conveyed an interest in the relevant property

25   to Great Western for the purpose of erecting and maintaining the towers and necessary wires "for

26   the transmission and distribution of electricity."  *Id.* at 37, 40.  It also required Great Western to

27   ─────────────────────

28   [1] For ease of reference, the Court refers to the PDF pages rather than the appendices' internal
     pagination unless otherwise specified.

1    "avoid as far as it reasonably can interfering with the use by the [property owner] of said strip of

2    land for any and all purposes." *Id.* at 41.  The easement further stated that "[a]ny violation of the

3    conditions of this grant shall terminate and extinguish the easement hereby granted." *Id.* at 42.

4    Mr. Addington does not appear to dispute that he was aware of the towers—and the easement—

5    when he purchased the property in 2015. *See* Dkt. No. 4 at 4; Dkt. No. 7 at 2 ("I bought the

6    property in 2015 having read and understood the easement.  I liked the towers, then and now.").

7        In 2016, PG&E determined that maintenance work was necessary for health and safety

8    reasons, including removing soil around the base of the towers and recoating the towers. *See* App.

9    Vol. II at 46–50.  PG&E sent Mr. Addington a letter explaining the scope of the work and the

10   anticipated timeline. *Id.*  The parties entered into a written agreement in September 2016 in which

11   Mr. Addington agreed to this work. *Id.*  But Mr. Addington argues that as a result of this work his

12   yard was less usable because it created "steep unlandscapable slopes." *See* Dkt. No. 4 at 4.

13   Eventually, PG&E agreed to pay Mr. Addington $36,790 for landscaping. *Id.* at 49.  Further

14   disagreements arose, and in November 2016 PG&E agreed to pay an additional $13,000, for a

15   total of $49,790 related to PG&E's work in Mr. Addington's yard. *Id.* at 52.  The parties'

16   agreement stated that Mr. Addington's "acceptance of this revised total consideration amount will

17   constitute a full and final release of PG&E from obligations arising under that Agreement." *Id.*

18   On November 14, 2016, Mr. Addington signed an acknowledgment that he had received a check

19   from PG&E for the agreed-upon amount. *Id.* at 54.  On the same document is a handwritten note

20   that  Mr. Addington "still wants to know how much soil was removed from his property." *Id.*

21       In June 2017, Mr. Addington unilaterally recorded a document styled as "Termination of

22   Easement" with the Alameda County Clerk's Office. *Id.* at 56.  This document does not identify a

23   basis for the purported termination. *Id.*  But according to Mr. Addington, he filed the document

24   because he believed the conditions for the easement had been violated and the easement had

25   therefore been dissolved. *See, e.g.*, Dkt. No. 4 at 8.  He noted that he had been unable to restore

26   his property to its condition prior to PG&E's work, and that PG&E had been uncooperative in his

27   efforts to do so. *Id.* at 8–9.  PG&E also failed to explain the purpose of their work to Mr.

28   Addington's satisfaction. *See id.* at 15–17.

2

United States District Court
Northern District of California

### B.    Procedural Background

PG&E filed for Chapter 11 bankruptcy in January 2019 in the United States Bankruptcy Court for the Northern District of California.  Mr. Addington initially filed a proof of claim seeking compensation in excess of $3.5 million.  *See* Dkt. No. 6-1 (App. Vol. I) at 463–71.  The claim appears to seek compensation for the electricity that PG&E transmitted via the towers in Mr. Addington's backyard since June 1, 2017, when he asserts the easement was terminated.  *See id.*  PG&E objected to this claim, explaining that Mr. Addington does not have the authority to unilaterally terminate the easement.  *See* App. Vol. II at 13, 60–80.  They further explained that even if the 2016 work somehow could have formed the basis for terminating the easement, Mr. Addington executed a release and accepted compensation for the work done on the property.  *Id.*

In May 2022, the bankruptcy court agreed and sustained PG&E's objection to Mr. Addington's claim.  *See* App. Vol. I at 6–8.  The court concluded that "under the terms of the recorded easement on Mr. Addington's real property, his attempt to terminate the easement in 2017 was ineffective."  *Id.* at 6.  The court nevertheless granted Mr. Addington an opportunity to amend his proof of claim "to state a claim for damages stemming from damage that occurred *after* the date of payment following Mr. Addington's signed release of claims arising from [PG&E's] revised work agreement . . . ."  *Id.* (emphasis added).

Mr. Addington accordingly amended his claim, this time seeking approximately $1 million for property damage and emotional distress.  *Id.* at 477–85.  Mr. Addington contended that PG&E's actions "have resulted in a substantial portion of the yard being unusable and unfixable."  *Id.* at 483.  Their work on the towers "created steep grades" such that "traditional landscaping will not survive."  *Id.*  PG&E further told Mr. Addington that an "approved engineering plan" would be needed before Mr. Addington could move soil within a 13-foot radius of the towers' legs, so he is "effectively foreclose[ed] from landscaping" his yard.  *Id.*  His family lost the ability to use the backyard, including a previous basketball court, and his property value diminished as well.  *Id.*  PG&E again objected, explaining that the asserted damages all occurred *prior* to Mr. Addington signing the release of claims.  *See* Dkt. No. 6-3 (App. Vol. III) at 6–23; *see also id.* at 24–37.  In response, Mr. Addington sought to amend his proof of claim for a second time.  *See id.* at 119–

130.  The motion to amend sought quiet title with respect to the towers; declaratory relief; damages related to the release Mr. Addington signed with PG&E; emotional distress damages; and further discovery from PG&E.  *Id.*  Although the bankruptcy court allowed the motion to amend to proceed in the bankruptcy action as a "supplement" to his proof of claim, Mr. Addington also filed a separate adversary proceeding in February 2023 seeking largely the same relief.  *See id.* at 158; *see also* Dkt. No. 6-4 (App. Vol. IV) at 6–14.  In both the motion to amend and the adversary proceeding, Mr. Addington alleged that the towers now belonged to him, and he could do what he wanted with them.  *See id.*  He also sought guidance as to whether PG&E had the right to prevent Mr. Addington from updating the landscaping in his yard.  *Id.*

PG&E moved for summary judgment as to Mr. Addington's claim.  *See id.* at 33–55.  As before, PG&E argued that the easement, which grants PG&E the right to erect and maintain the towers for electrical transmission, remains in place.  *Id.*  It further suggested that Mr. Addington's claim attempted to make an end run around the easement and the release that he previously signed and for which he was compensated.  *Id.*  On July 24, 2023, the bankruptcy court granted PG&E's motion for summary judgment.  *See* App. Vol. I at 10–20.  The court held that Mr. Addington (1) did not own the towers; (2) did not present any actual controversy that warranted a determination of his rights under the easement; (3) could not recover damages for causes of action related to PG&E's 2016 work around the towers that he had already released; and (4) could not seek emotional distress damages based on the state of his property.  *Id.* at 15–20.

Mr. Addington filed a motion for reconsideration.  *See* App. Vol. IV at 134–141.  The bankruptcy court denied Mr. Addington's motion the following day.  *See* App. Vol. I at 27–28.  The court reasoned that Mr. Addington did not meet the standard required for reconsideration: despite his suggestion otherwise, Mr. Addington did not demonstrate clear error or manifest injustice, and instead just rehashed arguments that the court already rejected.  *Id.*  Mr. Addington then appealed the bankruptcy court's orders.  *See* Dkt. No. 1 (Notice of Appeal).

## II.   LEGAL STANDARD

District courts have jurisdiction to hear appeals from final judgments, orders, and decrees of bankruptcy judges.  28 U.S.C. § 158.  A district court reviews a bankruptcy court's decision by

United States District Court
Northern District of California

applying the same standard of review used by circuit courts when reviewing district court decisions. *In re Greene*, 583 F.3d 614, 618 (9th Cir. 2009). The district court accordingly reviews a bankruptcy court's grant or denial of summary judgment de novo. *See In re Lewis*, 97 F.3d 1182, 1185 (9th Cir. 1996). The district court will affirm a grant of summary judgment if, drawing all reasonable inferences in favor of the non-moving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Id.*

Because motions for reconsideration "are addressed to the sound discretion of the trial court," they "will not be reversed absent some abuse of discretion." *Martinelli v. Valley Bank of Nevada*, 96 B.R. 1011, 1012 (9th Cir. BAP 1988). To find an abuse of discretion, this court "must have a definite and firm conviction that the [bankruptcy] court . . . committed a clear error of judgment in the conclusion it reached . . . ." *Nunez v. Nunez*, 196 B.R. 150, 155 (9th Cir. BAP 1996) (citation omitted). "It is not enough to show that a grant of the motion might have been permissible or warranted; rather the decision to deny the motion must have been sufficiently unwarranted as to amount to an abuse of discretion." *Plotkin v. Pac. Tel. & Tel. Co.*, 688 F.2d 1291, 1293 (9th Cir. 1982).

## III.   DISCUSSION

Mr. Addington raises specific "issues of fact" and "issues of law" that he believes the bankruptcy court wrongly decided in granting summary judgment in favor of PG&E. *See* Dkt. No. 4 at 11–16. In short, Mr. Addington disagrees with the bankruptcy court's analysis and is seeking court assistance in his dispute with PG&E. Having reviewed the record in detail, however, the Court cannot conclude that there are genuine issues of material fact precluding summary judgment in PG&E's favor or that the bankruptcy court's denial of Mr. Addington's motion for reconsideration resulted from "clear error." The Court accordingly affirms.

### A.   Ownership of Electric Transmission Towers

First, Mr. Addington argues that the bankruptcy court erred in determining that he did not own the electric transmission towers in his backyard. *See* Dkt. No. 4 at 11–13. Mr. Addington urges that because the towers are immovable, they are "real property" and he owns them since they are affixed to his property. *Id.* As such, Mr. Addington urges that he can restrict PG&E's

use of the towers. *Id.* As the bankruptcy court explained, Mr. Addington misapprehends the nature of the easement at issue in this case. *See* App. Vol. I at 15–16. The parties' respective rights are determined by the language of the easement itself. *See* Cal. Civ. Code § 806. Mr. Addington's suggestion that the towers became his property once built is belied by the language of the easement. Here, the easement conveyed an interest in Mr. Addington's property to PG&E explicitly for the purpose of erecting and maintaining the towers and necessary wires "for the transmission and distribution of electricity." *See id.* at 37, 40. PG&E's ability to transmit and distribute electricity would cease to exist if Mr. Addington owned the towers the moment they were constructed. Mr. Addington's general citations to "black letter law" are simply inapposite, and do not undermine the bankruptcy court's analysis.

### B.    Trespass and Emotional Distress

Mr. Addington next suggests that the bankruptcy court erred in rejecting his attempt to add new claims for damages for emotional distress based on trespass on his land. *See* Dkt. No. 4 at 13–14. Mr. Addington urges that PG&E trespassed on his property by removing a light that he had attached to one of the towers and taking photographs in his yard. *See id.* His use of the backyard was, he suggests, "served by putting a light on the tower." *Id.* at 13. Mr. Addington further suggests that the light could have safely stayed where it was and PG&E acted in bad faith in removing it. *Id.* at 13–14. But the bankruptcy court explained that despite having ample opportunity to plead facts supporting his claim for emotional distress, Mr. Addington failed to do so. *See* App. Vol. I at 18–20. Even if the Court were to consider Mr. Addington's additional allegations now, his request for damages appears based on the mistaken belief that he has control over the towers under the terms of the easement. He has provided no reasoned basis for the assumption that he can unilaterally alter PG&E's property. In contrast, the easement explicitly allows PG&E to maintain its towers.

### C.    Inadequate Discovery

Mr. Addington also appears to argue that the bankruptcy court erred in granting summary judgment before allowing for reasonable discovery. *See* Dkt. No. 4 at 15–16. Mr. Addington states, for example, that he "want[s] to know what work was done on [his] property and why it

was done." *See id.* at 15.  This includes "the engineering report that guided their work on [his] property" and the "standards" that he must meet for future work in his yard.  *Id.*  The bankruptcy court provided guidance on how Mr. Addington could seek additional discovery beyond what the parties exchanged informally.  *See* App. Vol. I at 411–13.  However, Mr. Addington did not file a motion to compel or seek additional time to respond to the motion for summary judgment to conduct such discovery.  And the information he is now seeking does not appear related to his existing bankruptcy claim such that it would preclude summary judgment.  As Mr. Addington acknowledges in his opening brief, the information he is now seeking is "not intended to develop a Claim."  *See* Dkt. No. 4 at 16.  The bankruptcy court, therefore, did not err in granting summary judgment on the existing record.

*     *     *

At bottom, Mr. Addington asserts that he is "certain that the easement conditions have been violated and the easement has self terminated" under its own terms.  *See* Dkt. No. 4 at 8.  He is "just not sure what to do about it."  *Id.*  He also suggests that he has ongoing disputes with PG&E regarding the scope of their rights under the easement, including the need for him to seek PG&E's permission to renovate his own backyard.  *See* Dkt. No. 7 at 7.  But as much as Mr. Addington may want answers to these questions, that is not within the scope of this appeal or this Court's authority.  The bankruptcy court did not err either in granting summary judgment in PG&E's favor or in denying Mr. Addington's motion for reconsideration.  That ends the inquiry for purposes of this appeal.

## IV.   CONCLUSION

Accordingly, the Court **AFFIRMS** the bankruptcy court's grant of summary judgment in PG&E's favor and its denial of Mr. Addington's motion for reconsideration.  The Clerk is directed to close the case.

**IT IS SO ORDERED.**

Dated:   7/26/2024

HAYWOOD S. GILLIAM, JR.
United States District Judge

United States District Court
Northern District of California